(25 Misc. Rep. 438.)

### McALLISTER v. STUMPP & WALTER CO.

(Supreme Court, Special Term, New York County. December, 1898.)

1. ESTOPPEL TO ASSERT TITLE—PUBLIC SALES—ACQUIESCENCE.

An assignee of proprietary rights is estopped·from asserting that purchasers of the rights at a public sale by a receiver of a corporation, ·of which the assignee was a creditor, and to which a second assignment of the rights had been made, acquired no title, where he was present at the sale, and made no objection, other than that he had served a notice of the assignment on the receiver the day before.

2. SAME—NOTICE—CORPORATIONS.

The purchasers did not have imputed knowledge of want of title of the corporation by the fact that they were stockholders thereof, though the assignor formed the corporation, where it continued to exercise control over the rights until the receiver was appointed, without any objection by his first assignee.

**3. SAME.**

     The estoppel did not preclude the first assignee from dealing in the articles himself under their familiar names.

**4. SAME—INJUNCTION.**

     One having a right to prepare and vend proprietary articles may enjoin another from styling himself "sole proprietor" while exercising a similar right.

Injunction by Martha A. McAllister against the Stumpp & Walter Company to restrain defendant from exercising the right to prepare and vend certain proprietary articles. Judgment for plaintiff.

Edward C. Boardman and Charles J. McDermott, for plaintiff.
Charles G. F. Wahle, for defendant.

BISCHOFF, J. The plaintiff's ownership of the proprietary rights sought to be protected by injunction in this action is claimed through an assignment to her by one Matthews, who had in turn derived his title by assignment from F. E. McAllister, the originator of the preparations in question. Subsequent to the assignment by McAllister to Matthews, the former transferred or attempted to transfer these same rights to the corporation formed under the name "F. E. McAllister Company"; and, upon the insolvency of this corporation, all the proprietary rights possessed by it were sold by its receiver at public auction to Stumpp, Walter, and Eieke, the parties who thereafter formed the defendant corporation. Matthews, who was a creditor of the F. E. McAllister Company, and thus interested in the proceeds of the sale, was present at this auction, and yet made no attempt to assert his alleged rights in the presence of the bidders. At that time he merely asked if the receiver warranted the title offered, but made no further sign, and had simply contented himself with serving a notice upon the receiver, before the day of the sale, setting forth his claim under the assignment in his hands. So far, he protected himself only were any question to arise between himself and the receiver; but, as to the purchasers at the sale, his notice to the receiver did not affect the force of his consent that the property be sold, as evidenced by his standing by at the sale and suffering the bidding to continue, in part for his benefit, without protest or assertion of his claim. There was clearly an estoppel, and the dilemma cannot be escaped by resort to the suggested theory that the purchasers, who were stockholders of the F. E. McAllister Company, had imputed knowledge of the extent of that corporation's title. True, McAllister had knowledge of the facts touching his earlier assignment to Matthews, when he formed the corporation; but the members of the corporation knew only that he had continuously exercised complete and exclusive control over these proprietary rights, unhindered by any word or act of Matthews or of anybody else, and that he had devested himself of this apparently complete ownership, in favor of the corporation, which succeeded to the practical enjoyment of these rights, and still without any hindrance from Matthews, who consistently failed to assert his claim. When making the transfer of these rights to the corporation, McAllister acted only in a private capacity, and the corporation was no more bound by his knowledge of the previous assignment than it would have been

had its vendor been any other person. McAllister was certainly not the corporation's agent when he transferred to Matthews, and there is no principle upon which his personal knowledge could be imputed to his subsequent vendees, who were totally ignorant of the circumstances as a matter of fact. Therefore it must be held that the right to vend these proprietary articles passed to the defendant through the purchase at the receiver's sale, and an injunction cannot be granted which would operate to prejudice this right; but the title which the defendant derived by estoppel, as noted, was not exclusive of Matthews' right to avail himself of the interest which passed to him by virtue of his assignment from McAllister. The estoppel precluded any question by Matthews as to the defendant's right to prepare and sell these articles, but this was the limit of its extent; and Matthews still possessed a right to deal in such articles himself, under their familiar names, and to transfer such rights as he had to this plaintiff, his assignee.

This being the situation, the plaintiff, who has at least the same rights as has the defendant in the matter of publicly dealing with the preparations, may demand that the defendant be restrained from exploiting and advertising the preparations as being the subject of its sole proprietorship. Defendant's acts in styling itself the "sole proprietor" of the articles would amount to an unfair method of trade competition, as against the plaintiff, who is entitled to vend the goods under the same general designations; and the injunction is to issue upon this ground, whether or not the rights were properly to be viewed as rights of trade-mark, and whether or not the respective parties could derive enforceable rights by their transfers from McAllister. Both parties deal in the preparations, and, in any aspect, neither has a greater right than the other; hence the public assertion of exclusive control by one is an attempted usurpation of the rights of the other, and clearly to the latter's detriment.

Judgment for plaintiff for injunction, in form as granted pendente lite, with costs.

Judgment for plaintiff, with costs.